The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner with some modification. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
Accordingly, the Full Commission find as facts and conclude as matters of law the following which were entered into by the parties in the Pre-Trial Agreement filed on May 11, 1994, and at the initial hearing as
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act and the employment relationship existed between the parties at all relevant times.
2. The plaintiff's average weekly wage was $509.11, which yields a compensation rate of $339.43.
3. The defendant-employer is a duly qualified self-insured for purposes of the Act.
4. The plaintiff sustained a compensable injury on August 11, 1992.
5. The parties stipulated 4 pages of medical reports of Dr. James Nitka into evidence.
6. The issues for determination are:
 a. Whether plaintiff is entitled to change medical treatment from an orthopedic surgeon to a chiropractor;
 b. Whether plaintiff is entitled to any temporary total disability compensation; and
 c. Whether plaintiff is entitled to compensation for unauthorized chiropractic treatment?
* * * * * * * * * * *
The Full Commission adopt as their own all findings of fact found by the Deputy Commissioner, with minor technical modifications and with the omission of the original Finding of Fact Number 18, as follows:
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
FINDINGS OF FACT
1. On November 25, 1991, the plaintiff prepared and submitted an application for employment as an electrician with defendant-employer. Mr. Garvey supplemented the application with a resume on which he represented that he possessed a Greensboro City Electrician's card.
2. The Greensboro City Electrician's card is awarded to persons with at least two years of experience as an electrician and who passes a rigorous technical examination.
3. The plaintiff did not have the Greensboro City Electrician's card on November 25, 1991, and, in fact, the plaintiff last sat for the examination in September of 1993, and has twice failed the exam.
4. In his resume, the plaintiff claimed experience as an electrician from 1988 through 1991 with Cooper Electric in Greensboro. The plaintiff actually worked for Cooper Electric from September 30, 1991, through November 14, 1991, and was laid off. Additionally, plaintiff worked from September 1988 to February 1989 and from October 1990 to November of 1990, for a total of less than eight months of work experience.
5. Plaintiff claimed one year of courses toward an Associate Degree in electrical technology from Guilford Technical Community College. However, this claim was false. In fact, plaintiff had never attended the school and had never submitted an application to the school.
6. On or about December 19, 1991, defendant hired plaintiff based upon his representation of expertise and the city card, as defendant had a staff of 43 electricians, with only a few possessing city cards. The defendant was not recruiting for electrician-trainees.
7. At the time plaintiff was hired by defendant, he was receiving unemployment compensation through the North Carolina Employment Security Commission, and he continued to receive compensation even though he worked full-time with defendant through February of 1992. Plaintiff has since repaid the funds upon demand by the North Carolina Employment Security Commission.
8. Within the first month of plaintiff's employment, plaintiff's department manager began receiving complaints regarding plaintiff's inability to connect a light switch or a water heater. Therefore, in January of 1992, plaintiff was placed into defendant's training program, which required a three year training and competency testing to progress.
9. Both plaintiff's supervisor Eddie Gilmer and department head Dwight Bingman testified that if plaintiff had been honest in his experience and training on his application and resume, he probably would not have been hired as an electrician II nor as an electrician-trainee. In July of 1992, plaintiff's poor results on mechanical aptitude testing led plaintiff's manager to conclude that he did not qualify for either the electrician or electrician-trainee positions.
10. On August 6, 1992, Molly Zimmerman, Assistant Personnel Manager for defendant's White Oak Plant, met with the plaintiff to discuss other jobs available for him, as he would be disqualified on August 14, 1992 from his job in the electrician department. Ms. Zimmerman discussed a general trainee job in the card room with starting pay of $6.85 per hour. When the plaintiff advised that he was not willing to take a pay cut or night work, Ms. Zimmerman advised him that he could accept a different job or would be laid off.
11. On August 11, 1992, plaintiff stated that he injured his back when he fell on a piece of coal as he was leaving the powerhouse area. The plaintiff reported his injury to the plant nurse who referred him to Dr. James Nitka, an orthopedic surgeon with Greensboro Orthopedics.
12. Dr. Nitka examined the plaintiff and diagnosed him with a thoracolumbar sprain/strain. At that time, plaintiff complained of left side pain and left mid back pain. The plaintiff was authorized to return to work on August 15, 1992 with light work restrictions of no lifting over fifteen to twenty pounds, no stooping, and no bending.
13. Defendants made very light work available, and plaintiff worked on August 12, 13, and 14, 1992.
14. On August 14, 1992, Molly Zimmerman reviewed the lay-off checklist with plaintiff, and plaintiff's employment was terminated due to his unwillingness to accept other employment within his qualifications.
15. After plaintiff left defendant's work site on August 14, 1992, he went to see Russell Cobb, a local chiropractor. The plaintiff did not request permission from defendants to return to Dr. Nitka, nor did he request permission to be seen by Dr. Cobb.
16. At the time of Dr. Cobb's examination of plaintiff, plaintiff complained of extremely limited range of motion, inability to bend over, low back pain, and left thigh pain to knee.
17. Dr. Cobb continued to treat the plaintiff through October 16, 1992, and found plaintiff capable of returning to work as of September 21, 1992. However, in deposition testimony, Dr. Cobb was very surprised that plaintiff had in fact returned to employment on August 19, 1992 with CEI.
* * * * * * * * * * *
Based upon the findings of fact as found by the Deputy Commissioner and adopted by the Full Commission, the Full Commission find as follows:
CONCLUSIONS OF LAW
1. As a result of the compensable injury sustained on August 11, 1992, the plaintiff is entitled to compensation for medical treatment provided by Dr. James Nitka.
2. The plaintiff is not entitled to compensation for expenses incurred as a result of chiropractic treatment rendered by Russell Cobb, as the plaintiff failed to request permission to change treating physicians either from the defendant or the Industrial Commission. At no time prior to the hearing did the plaintiff request permission from the Commission for treatment by Dr. Cobb, even though plaintiff, through counsel forwarded a copy of an August 2, 1993 letter to Dr. Cobb regarding his attempt to collect payment for treatment from plaintiff. Pursuant to N.C. GEN. STAT. § 97-25, a claimant must seek approval of the Commission within a reasonable time after medical care is procured. Such was not the case with the treatment Mr. Garvey sought from Dr. Cobb. Therefore, compensation for such treatment must be denied.
3. Pursuant to N.C. GEN. STAT. § 97-29, the plaintiff is not entitled to temporary total disability compensation, as he was not out of work due to the compensable injury. The plaintiff was only out of work from August 15 to August 18, 1992, and those days out of work were not due to plaintiff's accident, but rather were due to his layoff after being disqualified from the electrician department. The plaintiff obtained other employment on August 19, 1992.
* * * * * * * * * * *
Accordingly, the foregoing stipulations, findings of fact, and conclusions of law engender the following:
ORDER
1. Plaintiff's claim for temporary total disability compensation is and under the law must be DENIED.
2. Plaintiff's claim for compensation for chiropractic care by Russell Cobb is and under the law must be DENIED.
3. Defendant shall pay for medical expenses for care provided by Dr. James Nitka to the plaintiff.
4. Each side shall pay its own costs, except that defendant shall pay $70.00 to Russell Cobb, as a fee for his deposition testimony.
IT IS FURTHER ORDERED that this case be removed from the Full Commission docket.
This the __________ day of ________________________, 1995.
 S/ ________________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ ________________________ COY M. VANCE COMMISSIONER
S/ ________________________ BERNADINE S. BALLANCE COMMISSIONER
JHB/nwm 08/11/95